# Delegation of Authority to Approve Suspension of Securities Trading on a National Market

The President is authorized by the general delegation authority in 3 U.S.C. § 301 to delegate to the Secretary of the Treasury his authority to approve the suspension of securities trading by the Securities and Exchange Commission under § 12(k) of the Securities Act of 1934, since nothing in that section affirmatively prohibits delegation or specifically designates another officer to receive delegation of the function.

Nothing in the legislative history of § 12(k) suggests that Congress expected the President to exercise his approval authority personally. Indeed, Congress may have felt it necessary to make explicit the § 12(k) approval authority at all only because of the independence otherwise given the SEC. Thus the congressional intent could have been simply to give the President the option, which he might not otherwise have enjoyed, to supervise the agency's decisions in this important area.

June 23, 1982

## MEMORANDUM OPINION FOR THE DEPUTY COUNSEL TO THE PRESIDENT

You have requested the views of this Office regarding the President's power to delegate to the Secretary of the Treasury his responsibility, under § 12(k) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*l*(k) (1982) (the Act), to approve the agency's summary suspension of securities trading on a national market for periods of up to 90 days.[1] For the reasons set forth below, we conclude that the President may delegate his § 12(k) approval authority to the Secretary of the Treasury.[2]

The President is generally authorized under 3 U.S.C. § 301 to delegate functions to "the head of any department or agency in the executive branch,"[3]

---

[1] Section 12(k) provides in pertinent part as follows

> If in its opinion the public interest and the protection of investors so require, the Commission is authorized summarily to suspend trading in any security (other than an exempted security) for a period not exceeding ten days, *or with the approval of the President, summarily to suspend all trading on any national securities exchange or otherwise, in securities other than exempted securities, for a period not exceeding ninety days.* (Emphasis added )

[2] We have not considered the legal issues raised by delegation to other government officials.

[3] Section 301 provides in full

> The President of the United States is authorized to designate and empower the head of any department or agency in the executive branch, or any official thereof who is required to be appointed by and with the advice and consent of the Senate, to perform without approval, ratification, or other action by the President (1) any function which is vested in the President by law, or (2) any function which such officer is required or authorized by law to perform only with or subject to the approval, ratification, or other action of the President: *Provided,* That nothing contained herein shall relieve the President of his responsibility in office for the acts of any such head or other official designated by him to perform such functions Such designation and authorization shall be in writing, shall be published in the Federal Register, shall be subject to such terms, conditions, and limitations as the President may deem advisable, and shall be revocable at any time by the President in whole or in part.

428

including, of course, the Secretary of the Treasury. This general authorization, however, is qualified in 3 U.S.C. § 302, which provides that:

> The authority conferred by this chapter shall apply to any function vested in the President by law *if such law does not affirmatively prohibit delegation of the performance of such function as herein provided for, or specifically designate the officer or officers to whom it may be delegated.* This chapter shall not be deemed to limit or derogate from any existing or inherent right of the President to delegate the performance of functions vested in him by law, and nothing herein shall be deemed to require express authorization in any case in which such an official would be presumed in law to have acted by authority or direction of the President. (Emphasis added.)

The issue, therefore, is whether § 12(k), the law investing the approval authority in the President, either "affirmatively prohibit[s] delegation" or "specifically designate[s] the officer or officers to whom [the function] may be delegated." Nothing in § 12(k) specifically designates a subordinate officer to receive delegation of the function. Nor, we believe, does § 12(k) affirmatively prohibit delegation.

The category of statutes which affirmatively prohibit delegation is very narrow. Statutes may prohibit delegation either by their terms or by express statements in the legislative history. In addition, in extremely limited circumstances, the function involved might be of such fundamental gravity as to render inescapable the conclusion that Congress would not have created the function but for the assumption that the President would exercise it personally. Although the congressional purpose underlying § 301 was primarily to relieve the President of routine paperwork, the Congress rejected a proposal to limit the delegable functions to administrative duties[4] and chose instead generally to permit delegation of even sensitive and discretionary matters.[5] The bill's sponsor stated that delegation would be permitted except when a function or responsibility was "especially imposed by law" upon the President.[6]

The power to suspend trading on a national market is of course a grave responsibility with important economic, political, and diplomatic consequences. The Supreme Court has characterized as "awesome" the narrower authority under § 12(k) summarily to suspend trading in a single security for up to 10 days. *SEC* v. *Sloan*, 436 U.S. 103, 112 (1978). The authority to suspend trading on an entire market for up to 90 days is obviously of far greater magnitude.

Nevertheless, § 12(k) does not on its face preclude delegation. Nor have we found any indication in the legislative history that Congress would not have provided for a market suspension power but for the assumption that the President

---

[4] 95 Cong. Rec. 11396 (1949)

[5] *See* 3 U.S C § 303, defining delegable functions to include "any duty, power, responsibility, authority or discretion vested in the President or other officer concerned."

[6] 95 Cong. Rec. 11395–96 (1949) (remarks of Rep McCormack). *See also id.* ("the President's express duty"); *id.* at 11396 ("expressly delegated to the President")

would personally exercise his approval authority.[7] It is significant in this regard that Congress established the agency to be relatively free of executive oversight or supervision. Congress could well have believed that, without the explicit § 12(k) approval authority, the President would have had no power to disapprove the agency's decision to suspend market trading. The congressional intent could have been simply to give the Executive the option, which he might not otherwise have enjoyed, to supervise the agency's decisions in this important area. Such an intent would not be frustrated by the President's determination not to exercise the approval power personally but to delegate it elsewhere within the Executive Branch, especially to an officer intimately involved with monetary and financial matters. Because § 12(k) is silent regarding the President's authority to delegate his approval authority, and because a plausible explanation for a congressional decision to vest approval authority in the President exists apart from the possibility that Congress would not have created the suspension power but for the assumption that the President would exercise it personally, we conclude that § 12(k) is not a statute that affirmatively prohibits delegation. The President is therefore empowered to delegate that authority to the Secretary of the Treasury under § 301.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[7] Section 12(k) was originally enacted as §§ 15(c)(5) and 19(a)(4) of the Act and was recodified, with insubstantial changes, by the Securities Acts Amendments of 1975. 89 Stat. 118